OSBORN MALEDON, P.A.
DAVID B. ROSENBAUM (0098A9)
(drosenbaum@omlaw.com)
COLIN M. PROKSEL (034133)
(cproksel@omlaw.com)
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: +1 602 640 9000

COOLEY LLP
TERESA MICHAUD (*pro hac vice*)
(tmichaud@cooley.com)
ARIANA E. BUSTOS (*pro hac vice*)
(abustos@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, California 90071-1560
Telephone: +1 213 561 3250

TIANA DEMAS (*pro hac vice forthcoming*)
(tdemas@cooley.com)
110 N. Wacker Drive
Suite 4200
Chicago, Illinois 60606-1511
Telephone: +1 312-881-6500

REECE TREVOR (*pro hac vice*)
(rtrevor@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000

Attorneys for Defendant
Lowe's Home Centers, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Ivonne Carbajal, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Lowe's Home Centers, LLC, a North Carolina limited liability company, and Salesforce, Inc., a Delaware Corporation,<br><br>Defendants. | Case No.  2:24-cv-01030- DLR<br><br>**MOTION TO DISMISS FIRST AMENDED COMPLAINT BY LOWE'S HOME CENTERS, LLC**<br><br>**(Oral Argument Requested)** |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Defendant Lowe's Home Centers, LLC ("Lowe's) moves to dismiss Plaintiff Ivonne

2    Carbajal's First Amended Class Action Complaint ("FAC") with prejudice for lack of

3    standing under Article III of the Constitution and Federal Rule of Civil Procedure 12(b)(1),

4    lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim under Rule

5    12(b)(6). This motion is supported by the concurrently-filed declaration of Teresa Michaud.

6    **I.    INTRODUCTION**

7    This is one of over a dozen nearly identical lawsuits filed across Arizona and a

8    handful of other states seeking to exploit a narrow Arizona statute applying to telephone

9    service records. These lawsuits attempt to stretch the statute beyond text and reason to

10   penalize companies for simply learning whether their customers open routine email

11   communications that the customers signed up to receive. Here, Plaintiff alleges that Lowe's

12   and co-defendant Salesforce, Inc. ("Salesforce") use software code in the emails to know

13   whether and how she interacted with Lowe's messages (*e.g.*, whether she opened the email

14   or clicked on links within the email). Plaintiff invokes the Arizona Telephone, Utility and

15   Communication Service Records Act ("TUCSRA"), a law passed in the mid-2000s to

16   protect the confidentiality of telephone call and related *utility records*, not to regulate the

17   types of communications at issue here. The Court should dismiss Plaintiff's FAC because

18   Plaintiff lacks standing to sue, Lowe's is not subject to personal jurisdiction here, and the

19   statute does not apply to the actions alleged.

20   First, Plaintiff alleges no cognizable injury and thus lacks standing under Article III.

21   She barely alleges that Lowe's collected any data about her at all, and at most, she pleads a

22   bare statutory violation. Her claims that Lowe's collected non-sensitive metadata about her

23   interactions with its emails creates no injury of the sort traditionally recognized in federal

24   courts.  As another court recently found in a nearly identical case, this Court lacks subject

25   matter jurisdiction over her claim.

26   Second, Lowe's (a resident of North Carolina) is not subject to personal jurisdiction

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

**LOWE'S MTD FAC
2:24-CV-01030-PHX-DLR**

in this Court.[1] The FAC does not allege a single act connecting Lowe's conduct to Arizona—apart from Plaintiff's residency, which controlling case law holds is not enough. Lowe's has not purposefully directed any suit-related conduct towards Arizona, and so cannot be sued here.

Third, even if the Court had personal and subject matter jurisdiction, Plaintiff fails to state a claim. TUCSRA's plain text, bolstered by analogous statutes, case law, and legislative history, makes clear that it protects none of the information at issue in the FAC. The statute was designed to protect only service records created and held by phone companies, public utilities, and similar providers of communication services. Plaintiff's FAC would have this Court rewrite and transform a narrow state statute into a broad, catchall privacy law. The Court should decline that invitation.

These errors are myriad and fatal. Plaintiff has declined to amend her FAC to try and cure them, and she could not do so even if offered another chance. Michaud LRCiv 12.1 Certification and Declaration. ¶ 2. The Court should dismiss the FAC with prejudice.[2]

## II.   FACTUAL BACKGROUND

Plaintiff alleges that Lowe's utilized a "hidden embedded tracking system" that she dramatically calls "spy tracking pixels" in marketing emails sent to Plaintiff after **she** signed up for Lowe's email marketing list. FAC ¶¶ 1, 3.  Plaintiff claims the alleged pixels "obtain, collect, record and store" various metadata about the emails that Lowe's customers receive, such as whether and when "the email recipients open and read emails from Lowe's, where they open it, how long they looked at it, whether they forwarded it, and how to best target recipients with future emails." *Id*. ¶ 10.

The FAC says little about what this pixel technology is or how it works, and it says even less about how Lowe's supposedly used it to harm Plaintiff. She alleges that within the past "two years" she has received and opened emails from Lowe's, and "most recently"

---

[1] Salesforce is simultaneously filing a separate motion to dismiss for lack of personal jurisdiction.

[2] Lowe's reserves the right to compel Plaintiff's claims to binding arbitration pursuant to her agreement to Lowe's Terms of Use, which contain an arbitration clause, as well as to enforce its arbitration rights as to any putative absent class members in this action.

opened one of the at-issue emails in March 2024. *Id.* ¶¶ 15, 16. Plaintiff does not provide any more specificity, such as when she made an account with Lowe's, how she signed up for Lowe's mailing list, where she was when she opened the at-issue email or signed up for a Lowe's account, or—most importantly—any details about the information that Lowe's allegedly acquired from her. Plaintiff claims that "[e]ach time" she opened an email from Lowe's that Lowe's "procured information identifying her and disclosing when she opened and read the email through the email tracking software embedded in the emails." *Id.* ¶ 17. Apart from a passing and unexplained allegation that Lowe's was able to learn "identifying" "information" about her, *id.*, Plaintiff does not describe any specific information that was disclosed, much less any personal information that Plaintiff did not voluntarily give to Lowe's when she signed up requesting to receive the marketing emails.

Under this amalgam of vague allegations, Plaintiff claims that Lowe's violated A.R.S. § 44-1376.01, a provision of TUCSRA. However, TUCSRA is not a general-purpose privacy protection or anti-eavesdropping statute. Instead, the Arizona Legislature enacted TUCSRA in 2006 to protect a narrow set of consumer utility service records against a specific threat: individuals who impersonated consumers to extract information about them from their utility records. The Legislature was concerned that "over 40 'data broker' companies" had "fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting.'" Ariz. Sen. B. Summ., 2006 Reg. Sess., H.B. 2785 (Apr. 24, 2006).[3] This original version of the statute, however, protected only telephone records. The next year, the Legislature added similar prohibitions on "pretexting" for "communication service records" and "public utility records," specifically noting that the addition "expands the existing crime of falsely procuring, selling or receiving *telephone records*" to include these two new categories of records. Ariz. H.B. Summ. 2007 Reg. Sess. H.B. 2726 (Apr. 30, 2007).[4] As the Senate sponsor put it, his bill was designed to address

---

[3] *Available at* https://tinyurl.com/397yxmxc.
[4] *Available at* https://tinyurl.com/jdfpvp64.

the concern that pretexters could "pretend that they're someone else and get your personal information **from a utility**." *H.B. 2726: Hearing Before the Sen. Comm. On Commerce & Econ. Dev.*, 48th Leg. 1st Reg. Sess. (Ariz. 2007) (statement of Sen. Farnsworth)[5]. Against this backdrop, the Legislature passed TUCSRA, granting these utility-generated and -maintained records special statutory protection. For the next fifteen years, not a single court was ever called on to interpret the statute's definitions or civil liability provisions.

**III.   ARGUMENT**

    **A.   Plaintiff has not alleged an injury sufficient for Article III standing.**

"Article III standing requires a concrete injury even in the context of a statutory violation"—an injury that is more than a "bare procedural violation divorced from any concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 440 (2021) (cleaned up). The minimum injury required must bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," as Article III demands. *Id.* at 425.

Plaintiff pleads no such concrete injury flowing from the alleged violation of § 44-1376.01 In fact, Plaintiff hardly explains how Lowe's purported conduct affected her **at all**. The only allegation concerning Plaintiff's experience with Lowe's marketing emails—and it is a wholly conclusory one—is the claim that "Defendants procured information identifying her and disclosing when she opened and read the email[.]" FAC ¶ 17.

*TransUnion* required that Plaintiff plausibly allege that her "injury" was the type recognized in traditional privacy claims, like intrusion on seclusion or disclosure of private information. 594 U.S. at 425. Both those torts require the existence of a protected privacy interest whose violation would be "highly offensive to a reasonable person." *Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040, 1045 (D. Ariz. 2023) (quoting Restatement (Second) of Torts § 652B); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022) (quoting Restatement (Second) of Torts § 625D)).  Plaintiff cannot meet this test, and in fact, a

---

[5] *available at* https://www.azleg.gov/videoplayer/?eventID=2007031276&startStreamAt=1663 at 38:23.

federal court dismissed a nearly identical lawsuit alleging TUCSRA violations arising out of marketing email on standing grounds just days ago. *See Hartley v. Urban Outfitters, Inc.*, 2024 WL 3445004 (E.D. Pa. July 17, 2024).

*First*, Plaintiff's claims that Defendants "procured information identifying her" and "paint[ed] a uniquely identifiable detailed picture of Plaintiff" are entirely conclusory and implausible. FAC ¶¶ 6, 17. Nothing in the FAC indicates that Defendants "identif[ied]" Plaintiff by anything more "detailed" than the email address that she ***voluntarily*** provided to Lowe's when she signed up for these marketing emails. *Id.* ¶¶ 1, 17; *see also, e.g.*, *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (conclusory allegation that defendant captured plaintiff's "personal information" insufficient for standing); *I.C.*, 600 F. Supp. 3d at 1049 ("[T]he Court is hard pressed to conclude that basic contact information, including one's email address . . . is private information."). This and other information that Plaintiff "voluntarily disclosed" to Lowe's cannot possibly have injured her. *Hartley*, 2024 WL 3445004, at *6 ("As a willing subscriber, Plaintiff could not have been harmed by Defendant's procurement of her name or associated email addresses— details she necessarily provided to Defendant when she signed up for its promotional emails.").

*Second*, Plaintiff does not plausibly allege that any reasonable person would consider information about "when she opened and read the email" to be so private that its interception would be highly offensive. FAC ¶ 17. Nor could she: "As a matter of law . . . digital records reflecting merely the dates and times at which Plaintiff opened promotional emails she signed up to receive, and the length of time she spent reading them, are not sufficiently personal to support a concrete injury." *Hartley*, 2024 WL 3445004, at *7. On the contrary, courts have long held that collection of this kind of metadata about when and how long a user interacts with a piece of digital marketing does not give rise to an Article III privacy injury. *See, e.g.*, *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no privacy injury in recording of mouse movements and clicks on website); *Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023)

(same); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (same).

**Third**, the FAC refers at various points to a hodgepodge of other information: "associated email addresses, email client type, email path data, IP addresses, and device information," "if and where you clicked within an email," and whether a user printed the email, or spent time reading the email, or forwarded the email. FAC ¶¶ 3, 69. Plaintiff nowhere claims that Defendants collected this information *from her*, but even read charitably, the FAC does not establish a protected privacy right in any of this information. Many of the terms are entirely unexplained: what, for instance, is "email path data" or the unspecified "device information" at issue? As to the rest, Plaintiff fails to explain what makes them private and why a reasonable person would consider their collection highly offensive. As the court in *Hartley* put it in dismissing nearly identical claims, "Plaintiff fails to sufficiently allege how she was harmed by Defendant gleaning the type of device, operating system, or email viewing platform she used to read Defendant's emails, and in any event, such details are not comparable to those traditionally contemplated as giving rise to a reasonable privacy interest." 2024 WL 3445004, at *6..

At most, the Court might infer that Lowe's can ascertain the effectiveness of its advertising and marketing messages based on which links Plaintiff clicked in an email. But there is no protected privacy interest in this information—especially since the information was allegedly provided to Lowe's, the sender of the communications—making this activity no more private than browsing shelves in a brick-and-mortar store. *Cook*, 689 F. Supp. 3d at 66 ("[Plaintiff] certainly doesn't have a reasonable expectation of privacy in this kind of public shopping behavior in the physical world, and she doesn't have it in the digital world, either."). In short, "Plaintiff does not allege that she disclosed any sensitive information to Defendant," and so she lacks standing. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

**Fourth**, and finally, all of Plaintiff's claims that she had a reasonable expectation of privacy in any of the information at issue is further undermined by the fact Lowe's specifically advised her that it could collect and use certain information related to her online

1    interactions with Lowe's. Lowe's online Privacy Statement, which appeared on its website

2    during the relevant period, disclosed that Lowe's "and our partners" would collect "[o]nline

3    activities information" when Plaintiff "interact[ed] with" Lowe's "advertisements."

4    Michaud Decl. Ex. A. The Privacy Statement likewise informed Plaintiff that Lowe's and

5    its partners may collect "[i]dentification information that can be used to identify [her],"

6    including "name, alias, address" and "IP address," and that it may do so using "automated

7    means" *Id.* Lowe's also advised Plaintiff that it would use this information to "[c]onduct

8    research and internal analytics," and "[d]etermine and manage the effectiveness of our

9    advertising and marketing." *Id.* Indeed, Lowe's even disclosed the exact email pixel

10    technology that Plaintiff challenges here: "Lowe's and our business partners also use . . .

11    pixels," including to "evaluate the effectiveness of our promotional campaigns." *Id.* Against

12    this backdrop, even if Plaintiff had alleged an expectation of privacy in any of the data at

13    issue, such an expectation would not be sufficiently reasonable to support finding a

14    cognizable Article III injury.

15             **B.    Lowe's is not subject to personal jurisdiction in Arizona.**

16         Plaintiff does not and cannot allege that Lowe's is subject to personal jurisdiction in

17    Arizona. To begin, Plaintiff's allegations do not establish general jurisdiction, as she

18    concedes Lowe's is registered in and its principal place of business is in North Carolina.

19    FAC ¶ 19; *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (a

20    corporation is subject to general jurisdiction where it "engages in a substantial, continuous,

21    and systematic course of business," *i.e.*, "a corporation's place of incorporation or principal

22    place of business"). While Plaintiff alleges in passing that "[t]he Court has personal

23    jurisdiction over Defendants because Defendants conduct business in Arizona," FAC ¶ 22,

24    "merely 'doing business' is insufficient to establish general jurisdiction," *Goodwin v. Best*

25    *Plan, Int'l, Ltd.*, 2004 WL 1924147, at *3 (N.D. Cal. Aug. 30, 2004). Nor does Plaintiff's

26    FAC establish that this Court may exercise specific jurisdiction: she has not alleged that

27    Lowe's directed any actions at Arizona, much less any actions giving rise to her claims.

28    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Plaintiff's claim sounds in tort, so she must satisfy the "purposeful direction" test by plausibly alleging that 1) Lowe's committed an intentional act, 2) expressly aimed at Arizona, 3) causing harm that Lowe's knew was likely to be suffered in Arizona. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). The "determinative question" is typically "whether [defendant's] conduct was expressly aimed" at Arizona, and nothing in the FAC even hints that Lowe's conduct here was so aimed. *Id.* The **only** specific conduct by Lowe's that the FAC alleges is sending "marketing emails" to "Plaintiff and other Arizona residents who subscribed to Lowe's Home Centers, LLC's email list."[6] FAC ¶ 1. Plaintiff does not allege that Lowe's emails were at all targeted towards Arizona specifically, that the emails had any Arizona-directed content, or any other nexus exists between the emails and Arizona other than Plaintiff's current residence. And, of course, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

If anything, the FAC indicates that Plaintiff subscribed to the same Lowe's email marketing list open to anyone in the world, and voluminous analogous authority shows that this cannot be the basis for jurisdiction. Numerous courts throughout the Ninth Circuit have found that operating a generally accessible website—a marketing tool that is arguably more extensive and interactive than the emails at issue here—is not enough to support specific jurisdiction in cases alleging invasion of privacy. For instance, in *Noom*, the California-based plaintiff claimed that the defendant had recorded details of her visit to its website, which she alleged the defendant knew was likely to collect information "from California citizens." 682 F. Supp. 3d at 867. The court found that these allegations fell "far short" and dismissed for lack of personal jurisdiction. *Id.* at 868; *see also, e.g.*, *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 969 (C.D. Cal. 2023) (similar); *Mikulsky v. Bloomingdale's, LLC*, 2023 WL 6538380, at *3 (S.D. Cal. Oct. 6, 2023) (similar); *Sacco v. Mouseflow, Inc.*, 2022

---

[6] Plaintiff's vague allegation that Lowe's "conducts business in Arizona," FAC ¶ 22, is too conclusory to be credited, and in any event, Plaintiff's claim neither "arises out of [n]or relates to" any business other than the alleged emails. *Schwarzenegger*, 374 F.3d at 802 (citation omitted).

WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (similar); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *6 (E.D. Cal. May 26, 2021) (similar). The FAC alleges even less than the plaintiffs in *Noom* and each of these other cases did, and so fails to establish that Lowe's may be haled into an Arizona court on this claim.

### C.   Plaintiff fails to state a claim.

Even if she had standing and could establish personal jurisdiction over Lowe's, Plaintiff would fail to state a claim under TUCSRA. The FAC's sole theory of liability is that Lowe's "procure[d]" Plaintiff's "communication service records" without her permission in violation of § 44-1376.01(A). ¶ 72. TUCSRA defines "communication service record" to include a narrowly specified list of enumerated information that would appear on the type of utility records being protected:

> [S]ubscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

A.R.S. § 44-1376(1). The statute specifically notes that "'[c]ommunication service records do not include the content of any stored oral, wire or electronic communication or a telephone record." *Id.*

Plaintiff therefore fails to state a claim unless she has plausibly alleged that the information she claims Lowe's collected via its emails falls into one of these enumerated categories and otherwise qualifies as a "communications service record." She has not, and any attempt to do so would be futile.

#### 1.   Plaintiff cannot claim a statutory violation because she does not allege that Lowe's procured the records of a "communication *service*."

Even without considering each of the statutorily enumerated categories of "communication service records," the FAC has a fundamental problem: "communication

service records" are, on their face, only records created and held **by a communication service**, like an internet service provider or a wireless data carrier. But Plaintiff does not allege that Defendants unlawfully procured any records created and held by any of her communication service providers. Rather, the FAC charges that Defendants created **their own** records about her **communications with them**. *See, e.g.*, ¶ 3 (alleging that Defendants procure various information about "an email"), ¶ 10 (same). Plaintiff's theory would require the court to rewrite the statute, pretending that it reads "communication record" created by a party to the communication instead of "communication service record" maintained by a communication service provider. For at least four reasons, this is not a defensible reading of TUCSRA.

        a.    **The statutory definition of "communication service record" confirms it is limited to records held by communication services.**

First, the definition of "communication service record" includes information that would only be kept by a communication service. Only "subscriber information" can comprise a "communication service records," indicating that they pertain to records that communication services keep about their subscribers. A.R.S. § 44-1376(1) (emphasis added). Several of the statute's examples of "subscriber information" confirm this reading. For instance, "toll bills," records of a subscriber's "length of service," data about a subscriber's "payment method," and information about the "nature of the communication service provided" to a subscriber are all records that communications services typically maintain. *Id.* It would be nonsensical for this information to be in the definition of a "communication service record" if that term had Plaintiff's broad meaning.

        b.    **Plaintiff's reading of TUCSRA would render other provisions of the statute nonsensical.**

Second, parallel provisions of the statute confirm that "communication service" must modify "records" in a way that limits the definition by the entity that holds the records. Consider Section 44-1376(4), which defines a "public utility record" to include much of the

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

**LOWE'S MTD FAC**
**2:24-CV-01030-PHX-DLR**

same information as a "communication service record": "name, billing or installation address, length of service," and "payment method." *Id.* It stands to reason that a "public utility record" must therefore be a record held by a public utility, just as a "communication service record" must be a record held by a communication service. To hold otherwise would render the "public utility" and "communication service" language in each definition superfluous, since they otherwise cover much of the same information. When this Court interprets Arizona statutes, it strives to "give effect . . . to each word as appropriate" and ensure "that no provision is rendered meaningless, insignificant, or void." *Plaza v. Chase Home Finances LLC*, 2011 WL 13233550, at *4 (D. Ariz. July 27, 2011) (quoting *Mejak v. Granville*, 212 Ariz. 555, 557 (2006)).[7] The Arizona Legislature adopted the definitions of "public utility records" and "communication service records" to the statute at the same time, making it even less likely that the Legislature intended these terms to have the same meaning. 2007 Ariz. Legis. Serv. Ch. 210 (H.B. 2726).[8] Likewise, TUCSRA imposes certain obligations on "[e]ntities that maintain communication service records, telephone records or public utility records" and contains several provisions applicable to "a public utility, a telephone company or an entity that maintains communication service records." A.R.S. §§ 44-1376.01(B), 1376.02(B)–(E). This, too, indicates that the Legislature was concerned specifically with records maintained by each of these entities in the ordinary course of their business—not simply with information about *all* communications, nor records created by a party to a communication.

Indeed, a contrary reading would make a hash of the law. If "communication service records" did not have to be records maintained by communication services and "public utility records" did not have to be records maintained by public utilities, then anyone who obtained another person's name or other enumerated information from *any* source without

---

[7] Though the federal and state principles governing statutory interpretation differ little (if at all), Arizona principles govern here. "When," as here, "a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

[8] *Available at* https://www.azleg.gov/legtext/48leg/1R/laws/0210.pdf.

Cooley LLP
Attorneys at Law
Los Angeles

**Lowe's MTD FAC**
**2:24-cv-01030-PHX-DLR**

1    consent would be liable for violating Section 44-1376(A). There is no reason to believe that

2    the Arizona Legislature intended to hide the "elephant" of such sweeping criminal and civil

3    liability in the "mousehole" of a statute written about specific sets of records. *Whitman v.*

4    *Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

5                   **c.      Other Arizona statutes treat "communication service**
                            **records" as records held by communication services.**
6

7            Third, other statutes governing communication service records support Lowe's

8    reading, not Plaintiff's. The Arizona Eavesdropping and Communication Act ("ECA"),

9    enacted seven years before TUCSRA, provides a procedure for criminal prosecutors to

10   subpoena "communication service records." A.R.S. § 13-3018. The ECA's definition of

11   "communication service record" is **identical** to TUCSRA's. *Id.* § 13-3018(G). The ECA

12   also explains that a prosecutor may obtain a communication service record by issuing "a

13   subpoena duces tecum ***to a communication service provider***," who may certify such records

14   if they are "the regular communication service records that are ***used and kept by the***

15   ***communication service provider***." *Id.* §§ 13-3018(B), (D)(1) (emphases added). The ECA

16   thus obviously envisioned "communication service records" to be records held by

17   communication service providers. It cannot be that the Legislature adopted the ECA's

18   definition of "communication service record" in full when it enacted TUCSRA, yet intended

19   it to have a far broader meaning. And Arizona courts do not "interpret the [L]egislature's

20   use of the identical phrase in two statutes relating to the same general subject matter as

21   having two entirely different meanings." *Maricopa County v. Barkley*, 812 P.2d 1052, 1056

22   (Ariz. App. 1990).

23                  **d.      TUCSRA's   legislative   history   further   undermines**
                            **Plaintiff's atextual reading of the statute.**
24

25           Fourth, if any ambiguity remained as to TUCSRA's plain meaning, "the pertinent

26   legislative history confirms" that Plaintiff's reading cannot be correct. *State v. Cota*, 319

27   P.3d 242, 247 (Ariz. App. 2014). The Legislature enacted TUCSRA in response to a

28   particular narrow concern: that bad actors would impersonate consumers to extract personal

information from communication service providers with which those consumers held accounts and who maintained records about the consumers. *See supra* at 3-4. The harm that TUCSRA was designed to address was always that an individual would fraudulently obtain information created and held by communication service providers—not separately stored metadata about communications themselves by the sender, as Plaintiff urges here.

### 2. The statutorily defined categories of "communication service records" are facially inapplicable regardless.

Even if TUCSRA's scope were not limited to records created and held by communication service providers, Plaintiff would still fail to state a claim because she has not alleged that Lowe's collected any information listed in the statutory definition. Plaintiff invokes the full definition of "communication service record" in Section 44-1376(A), *see* FAC ¶ 73, but nowhere specifies which of its enumerated categories she contends encompasses each piece of data Lowe's allegedly collected, leaving the FAC's precise theory of liability murky. Most of the statutory categories are clearly inapplicable. The FAC never alleges that Defendants collected anything resembling Plaintiff's "name," "billing or installation address," "length of service," "payment method," "telephone number," or "toll bills." A.R.S. § 44-1376(1). That leaves only three potentially applicable statutory categories: "access logs," "records of the path of an electronic communication between the point of origin and the point of delivery," and "the nature of the communication service provided." Plaintiff does not plausibly allege that Lowe's collected any information that falls into any of these categories.

### a. Plaintiff does not plausibly allege that Lowe's collected "records of the path of an electronic communication between the point of origin and the point of delivery" without her permission.

None of Plaintiff's allegations go to the collection of records about how an electronic communication transited "between the point of origin and the point of delivery[.]" A.R.S. § 44-1376(1). On the contrary, Plaintiff claims that everything Lowe's collected was "the result of opening the email[.]" FAC ¶ 31. But an email cannot be opened before it is

delivered. Accordingly, everything that Plaintiff alleges Lowe's was able to obtain, from "email client type" to "device information," necessarily reflects what happened after Plaintiff purportedly received the emails—to use the statutory language, after "the point of delivery." It therefore falls outside the scope of this category and cannot support liability as a matter of law. Myriad courts interpreting privacy statutes with similar temporal requirements have reached equivalent conclusions. *See, e.g.*, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002) (information stored on website was not in transit, so could not be "intercepted" for purposes of federal Wiretap Act); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077-78 (N.D. Cal. 2015) (collecting Ninth Circuit cases involving emails where "the challenged acquisition occurred ***after the transmission was completed***" and so no interception could have occurred under the Wiretap Act) (emphasis added); *Hammerling v. Google LLC*, 2022 WL 17365255, at \*10 (N.D. Cal. Dec. 1, 2022) (conclusory allegation that defendant collected information "in real time" did not satisfy California Invasion of Privacy Act's requirement that communications be intercepted while "in transit"), *aff'd,* No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024).

While the FAC asserts in conclusory terms that Lowe's was also able to obtain "email path data," FAC ¶ 69, it does not even explain what "email path data" might be, much less any other supporting facts that would render this claim plausible. Rather, this allegation appears to be no more than a barely rephrased "[t]hreadbare recital[] of the elements of" a Section 44-1376.01 violation, "supported by mere conclusory statements," and so is not entitled to any credence on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

> **b.    Plaintiff does not plausibly allege that Lowe's collected "access logs" without her permission.**

Plaintiff may contend that Lowe's alleged documentation of "when she opened and read the email[s]" Lowe's sent her constitutes an "access log" under TUCSRA, but this is meritless. FAC ¶ 17. The statute's definition of "communication service record" is not concerned with the way a user interacts with a given communication, but her interaction with the "communication service" as a whole. Most of the other examples of "subscriber

1    information," like "length of service," "installation address," and "payment method,"
2    indicate as much. A.R.S. § 44-1376(1). Indeed, when the Legislature wanted to protect
3    information about specific communications, it knew how to do so: by referring explicitly to
4    a given "electronic communication." *Id.* No such language is present in the passing
5    reference to "access log[s]," so the more natural meaning is that it refers to logs of when a
6    consumer used an email *service* (or other communications) service, not when they accessed
7    an individual email or interacted with its content. For instance, while the statute might
8    protect logs of when a user logged into and out of her Gmail or Outlook account, there is
9    no basis to conclude that it protects logs of interactions with specific messages, as Plaintiff
10   would have the Court conclude.[9]

11                    **c.    Plaintiff does not plausibly allege that Lowe's collected
12                           information about "the nature of the communication
                              service provided" without her permission.**

13        Plaintiff cannot shoehorn her claims into the final statutory category, "the nature of
14   the communication service provided." A.R.S. § 44-1376(1). The various examples that the
15   Legislature provided of information in this category further define it: "caller identification,
16   automatic number identification, voice mail, electronic mail, paging or other service
17   features." *Id.*; *see also Wilderness World, Inc. v. Dep't of Revenue*, 895 P.2d 108, 111 (Ariz.
18   1995) ("[W]here general words follow the enumeration of particular classes of persons or
19   things, the general words should be construed as applicable only to persons or things of the
20   same general nature or class of those enumerated." (citation omitted)). All of these are
21   examples of services that a consumer might obtain from their telecommunications provider,
22   confirming that such features are the only items encompassed within "the nature of the
23   communication service provided." A.R.S. § 44-1376(1). Nothing that could fall into that
24   category is at issue in the FAC.

25        To the extent Plaintiff alleges that Lowe's wrongfully learned that Plaintiff had an

---

[9] Even if it did, Plaintiff's FAC would fail, since she cannot establish a privacy interest
sufficient to support federal standing as to Lowe's records of when she accessed a Lowe's
email message. *See supra* at 5-6; *Hartley*, 2024 WL 3445004, at *5-6.

"electronic mail" account, her claim is self-defeating. Plaintiff herself signed up for emails from Lowe's by voluntarily giving Lowe's her email address, FAC ¶ 1, and it would make no sense that sending an Arizonan a requested email using an address provided by the recipient could be the basis to find that a defendant had "procured" the knowledge that the recipient in fact had an email account. A.R.S. § 44-1376(1). Nor does Plaintiff allege that Lowe's ascertained any "other service features" from its purported use of pixel technology. As noted above, all the other categories of information set forth in the FAC pertain to how users *interacted with* Lowe's emails, not the features built into the communication services to which they are "subscriber[s]." *Id.*

This category, too, is inapplicable and provides no basis for liability.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss Plaintiff's Complaint. And because Plaintiff's theory of liability is premised on incurable errors— including the alleged acquisition of information that does not give rise to an Article III injury and a fundamental misreading of TUCSRA—that dismissal should be with prejudice.

Respectfully submitted,

Dated: July 25, 2024                    OSBORN MALEDON, P.A.


By: s/*David B. Rosenbaum*
   David B. Rosenbaum
   Colin M. Proksel
   2929 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012

COOLEY LLP

   Teresa Michaud (*pro hac vice*)
   Ariana E. Bustos  (*pro hac vice*)
   355 S. Grand Avenue, Suite 900
   Los Angeles, California 90071-1560

   Tiana Demas (*pro hac vice* forthcoming)
   110 N. Wacker Drive
   Suite 4200
   Chicago, Illinois 60606-1511

1

2

Reece Trevor (*pro hac vice*)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004

3

*Attorneys for Defendant Lowe's Home Centers,*
*LLC*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

LOWE'S MTD FAC
2:24-CV-01030-PHX-DLR