Gregory J. Marshall (#019886)
Emily R. Parker (#036286)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
gmarshall@swlaw.com
eparker@swlaw.com

*Attorneys for Defendant Salesforce, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivonne Carbajal, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Lowe's Companies, Inc., a Delaware corporation, and Salesforce, Inc., a Delaware corporation,<br><br>Defendants. | No. 2:24-cv-01030-DLR<br><br>**SALESFORCE, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendant Salesforce, Inc. ("Salesforce") moves to dismiss the single-count, First Amended Class Action Complaint ("FAC") in accordance with Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

I. **INTRODUCTION**

This lawsuit is one of a recent spate in which plaintiffs are attempting to twist a near 20 year-old Arizona statute designed to prevent a particular abusive practice involving utility records into an expansive and nonsensical privacy right. Plaintiff – who has filed at least three such lawsuits – alleges in the FAC that Defendant Lowe's Companies, Inc. ("Lowe's") obtained without her consent certain email read-receipt information from tracking pixels embedded in Lowe's emails – emails that Plaintiff signed-up to receive – in violation of Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376, *et seq*. ("ATUCA"), and that Salesforce provided the tracking pixel functionality to Lowe's through an on-line, subscription-based software platform through which Lowe's creates and sends its own emails, including deciding whether to incorporate tracking pixels in its emails. The Court should dismiss Salesforce for three (3) reasons. First, the Court lacks personal jurisdiction over Salesforce, as Salesforce did not direct any conduct to Arizona from which Plaintiff's claim arises, and Salesforce is otherwise not "at home" in Arizona. Second, Plaintiff's unadorned injury to privacy by Defendants' alleged provision of email read-receipt information is not a sufficient Article III injury and she therefore lacks standing to bring this claim. Third, the alleged read-receipt information at issue is not a "communication service record" within the meaning of the ATUCA and accordingly no violation of that statute is stated.

**MEMORANDUM OF POINTS AND AUTHORITIES**[1]

II. **RELEVANT BACKGROUND**

Salesforce is a software company that provides cloud-based customer relationship management ("CRM") software, and applications focused on sales, customer service,

---

[1] In the interests of brevity and economy, Salesforce joins in the Lowe's Motion to Dismiss filed contemporaneously with this Motion.

- 1 -

marketing automation, e-commerce, analytics, and application development. *See* Dawn Ratcliff Declaration ("Ratcliff Decl.") Ex. A at ¶ 3.[2] Salesforce offers subscriptions to a CRM software package called Salesforce Marketing Cloud. FAC ¶ 35; Ratcliff Decl. at ¶ 6. Lowe's subscribes to Marketing Cloud. FAC ¶ 3; Ratcliff Decl. at ¶ 7.

Subscribers like Lowe's access Marketing Cloud through an online portal, through which subscribers build and send their own emails. Ratcliff Decl. at ¶ 9. While Salesforce offers subscribers services such as customer support, Salesforce does not control email content or email recipients, nor does Salesforce send any emails on behalf of its subscribers. *Id.* at ¶ 8. Thus, Salesforce did not send any emails on behalf of Lowe's to recipients in Arizona or elsewhere. *Id.* at ¶ 5.

Marketing Cloud offers a tracking function, which allows subscribers like Lowe's to insert a tracking pixel (also known as an "open pixel") into the emails subscribers create and send. *Id.* at ¶ 12. Subscribers like Lowe's may also integrate third-party products into Marketing Cloud, including tracking cookies or other tracking technologies offered by third parties. *Id.* at ¶ 10. Salesforce advises subscribers that they are solely responsible for, among other things, providing notice and/or obtaining consent for use of tracking technologies. *Id.* at ¶ 11.

Lowe's uses Marketing Cloud to build its own emails, upload its own recipient lists, and initiate its own emails from the online portal. *Id.* at ¶ 20. Lowe's decides whether to use tracking pixel technology in the emails it creates and sends. *Id.* at ¶ 13. Salesforce functions as merely the "send engine" for the emails. *Id.* at ¶ 21. Under the Master Subscription Agreement (the "MSA"), "[Lowe's] will...(d) use Services...only in accordance with...applicable laws and government regulations." *Id.* at ¶¶ 17-18.

---

[2] "When reviewing a motion to dismiss for lack of personal jurisdiction brought under Federal Rule of Civil Procedure 12(b)(2), a court may consider extrinsic evidence—that is, materials outside the pleadings, including affidavits submitted by the parties." *SinglePoint Direct Solar LLC v. Curiel*, 2022 WL 331157, at *3 (D. Ariz. Feb. 3, 2022).

1   When subscribers use tracking pixels, any data obtained through the tracking pixel is sent to a private cloud database, where the subscriber may access or export that data. *Id.* at ¶ 14.  Salesforce does not use tracking extracts (*i.e.*, data obtained through tracking technologies, including tracking pixels), except to provide services to its subscribers.[3]  *Id.* at ¶ 15.  Lowe's can export its tracking extracts (*i.e.*, sends, clicks, opens, bounces, unsubscribes, and spam complaints) to its own File Transfer Protocol (FTP) servers, as Lowe's chooses.  *Id.* at ¶ 16.

In the FAC, Plaintiff alleges that Lowe's used Marketing Cloud to email "Plaintiff and other Arizona residents who subscribed to Lowe's Companies, Inc.'s email list," and that the emails utilized tracking pixels to collect certain read-receipt information without Plaintiff's consent.  FAC at ¶¶ 1, 3, 37.  Plaintiff alleges that Salesforce "provided" the tracking pixels to Lowe's.  *See id.* at ¶¶ 3, 4.

## III. THE FAC PROVIDES NO BASIS FOR PERSONAL JURISDICTION OVER SALESFORCE

### A. Legal Standards for Personal Jurisdiction.

The requirement for personal jurisdiction over an out-of-state defendant stems from the Due Process Clause, which "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  For that reason, the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantive justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[4]  Personal

---

[3] Under the terms of the MSA, Lowe's emails and recipient lists are treated as "Customer Data," which Salesforce is prohibited from accessing except to provide services to Lowe's, as compelled by law enforcement, or as expressly permitted in writing by Lowe's.  *Id.* at ¶ 24.

[4] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Daimler,* 571 U.S. at 125); *see also Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.,* 169 F. Supp. 3d 931, 935 (D. Ariz. 2016) ("Where, as here, there is no

- 3 -

jurisdiction must exist in one of two variants: general or specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011); *see also Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) ("[O]ur decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction.").

### 1.   Plaintiff has the burden of establishing personal jurisdiction.

"When a defendant moves to dismiss for lack of personal jurisdiction, 'the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.'" *Morrill*, 873 F.3d at 1141 (quoting *Schwarzenegger*, 374 F.3d at 802); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (affirming grant of defendant's motion to dismiss for lack of personal jurisdiction). "The mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977); *see also Alexander v. Circus Circus Enter., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) ("[T]his circuit has held that for purposes of personal jurisdiction, 'we may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" (quoting *Data Disc, Inv. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977))).

Instead, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)); *see also Schwarzenegger*, 374 F.3d at 800 ("[P]laintiff cannot 'simply rest on the bare allegations of [her] complaint.'" (quoting *Amba Mktg. Sys., Inc.*, 551 F.2d at 787). Additionally, only those facts that occurred *before* a plaintiff's claims arose are relevant to

---

applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which it sits."). Arizona law permits its Courts to exercise personal jurisdiction "to the maximum extent permitted by … the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see also Wal-Mart Stores, Inc. v. LeMaire,* 242 Ariz. 357 (App. 2017) (applying U.S. Supreme Court precedent to hold that Wal-Mart was not subject to personal jurisdiction in Arizona).

the jurisdictional inquiry.  *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

### *2.     General Personal Jurisdiction.*

General (or "all purpose") personal jurisdiction permits a court to adjudicate an action against a corporate defendant only where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State."  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 403 (2017) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014)); *Daimler*, 571 U.S. at 138–39 (the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'").

Thus, establishing general personal jurisdiction over a non-resident defendant is an exacting standard, and is limited, with rare exception not applicable here, to only the "place of incorporation and principal place of business."  *Id.* at 137; *id.* ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] … bases for general jurisdiction'" and "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."  (internal citations omitted) (alterations in original)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world."); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Simple jurisdictional rules … promote greater predictability.").

For this reason, the U.S. Supreme Court has expressly rejected the idea as "unacceptably grasping" that general personal jurisdiction can be exercised in every state where a corporation "engages in a substantial, continuous, and systematic course of business."  *Daimler*, 571 U.S. at 137–38; *id.* at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them[;] [o]therwise, 'at home'

would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

### 3. *Specific Personal Jurisdiction.*

#### a. *Supreme Court Precedent.*

The specific personal jurisdiction inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)); *see also Bristol-Myers Squibb Co.*, 582 U.S. at 262 (citing *Walden* for the proposition that the "primary focus" of the "personal jurisdiction inquiry is the defendant's relationship to the forum State"). Specific personal jurisdiction is "case-linked," meaning that the lawsuit must arise out of or relate to the defendant's purposeful conduct in the state. *Bristol-Myers Squibb Co.,* 582 U.S. at 262; *Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

Significantly, the defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State," and "not the defendant's contacts with the persons who reside there." *Walden*, 571 U.S. at 284–85 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 ("Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 264; *see also Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, *the very controversy* that establishes jurisdiction." *Bristol-Myers Squibb Co.,* 582 U.S. at 262 (quoting Goodyear, 564 U.S. at 919) (emphasis added). A "defendant's general connections with the forum are not enough" because even "continuous activity" within a state does not "support the demand that [a] corporation be amendable to suits *unrelated* to that activity." *Id.* at 264 (emphasis added).

### b. Ninth Circuit Analysis.

The Ninth Circuit, applying Supreme Court precedent, has established a three-part test for determining "whether a [non-resident] defendant has sufficient contacts to be subject to specific personal jurisdiction." *Morrill v. Scott Fin. Corp.,* 873 F.3d 1136, 1142 (9th Cir. 2017). First, "[t]he non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of [the forum's] laws." *Id.* Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities" *Id.* Third, "the exercise of the jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.*

Under the Ninth Circuit's test, "[t]he plaintiff has the burden of proving the first two prongs." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 802). Only if the plaintiff succeeds in satisfying *both* of the first two prongs does the burden shift to the defendant to "present a compelling case; that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802) (emphasis added).

### B. This Court does not have General Jurisdiction over Salesforce.

Under *Daimler*, Salesforce is not "essentially at home" in Arizona—there is simply nothing connecting Salesforce (a Delaware Corporation with its principal place of business in California) (*see* Ratcliff Decl. at ¶ 2) to Arizona in a way that meets the

- 7 -

1  "exacting standard" of general personal jurisdiction.  *See* 571 U.S. at 137;
2  *Schwarzenegger*, 374 F.3d at 801; *see also LeMaire*, 242 Ariz. at 358–59, 362–63, ¶¶ 1–2,
3  20–21 (holding that Arizona did not have general jurisdiction over Wal-Mart, a Delaware
4  corporation with its principal place of business in Arkansas, notwithstanding the fact that
5  Wal-Mart had 127 retail locations and four distribution centers in Arizona, employed
6  33,910 Arizonans (more Arizonans than the next two largest employers combined), spent
7  $1.5 billion with suppliers in Arizona, collected $270.3 million in Arizona sales taxes, and
8  paid $91.5 million in Arizona taxes).

9        The U.S. Supreme Court has rejected the argument that jurisdiction can be
10  exercised in *every* state where a corporation "engages in a substantial, continuous, and
11  systematic course of business."  *Id.* at 137–38, 139  n. 20; *LeMaire,* 242 Ariz. at 361, ¶ 15
12  (citing *Goodyear* for the proposition that the U.S. Supreme Court has "reasoned that
13  placement of [a product] into the stream of commerce, some of which may end up in the
14  forum, is not enough to confer general jurisdiction"); *see also CollegeSource, Inc. v.
15  AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) ("Marketing to forum residents,
16  at least where such marketing does not result in substantial and continuous commerce
17  with the forum, does not support general jurisdiction."); *SiteTools, Inc. v. Bansk Grp.
18  LLC*, No. CV228263DMGPVCX, 2023 WL 5505979, at *3 (C.D. Cal. July 14, 2023)
19  (explaining that defendant's emails directed at the California-based plaintiff did "not
20  equate to [the] 'continuous and systematic' contacts that would support general
21  jurisdiction in California.").

22        Plaintiff acknowledges that Salesforce is not incorporated in Arizona and does not
23  have its principal place of business in Arizona.  *See* FAC at ¶ 20; *see also* Ratcliff Decl. at
24  ¶ 2.  Moreover, Plaintiff has not alleged any facts supporting her conclusory statement that
25  Arizona has jurisdiction over Salesforce because Salesforce "conduct[s] business in
26  Arizona."  *Id.* at ¶ 22.  Salesforce does not own any real estate in Arizona, has less than
27  0.5 percent of its workforce in Arizona (*see* Ratcliff Decl. at ¶ 4), and Plaintiff offers no
28  evidence to suggest that Salesforce's business in Arizona is so "substantial and

1  continuous" that Salesforce is "at home" in Arizona.  *See Daimler*, 571 U.S. at 127.
2  Plaintiff cannot establish that this Court has general personal jurisdiction over Salesforce.

3        **C.**     **This Court does not have Specific Jurisdiction over Salesforce.**

4        A court may exercise specific jurisdiction over a non-resident defendant only if that
5  defendant has **sufficient, substantial contacts with the forum state** and the lawsuit
6  "arise[s] out of or relate[s] to the defendant's contacts with the *forum*."  *See Bristol-Myers*
7  *Squibb*, 582 U.S. at 256 (quoting *Daimler,* 571 U.S. at 127) (emphasis in original);
8  *Walden*, 571 U.S. at 284–85.  As discussed above, the Ninth Circuit determines whether
9  specific jurisdiction exists under a three-pronged test.  *See Morrill*, 873 F.3d at 1142.  As
10 shown below, Plaintiff cannot sustain her burden of proving either of the first two prongs
11 of that test, nor would this Court's exercise of personal jurisdiction over Salesforce be
12 reasonable under the third prong.

13         **1.**     ***Plaintiff Cannot Establish that Salesforce "Purposefully Directed"***
14                ***Any Activity to Arizona.***

15       Under the first prong of the specific jurisdiction test, Plaintiff must show that
16 Salesforce "purposefully directed [its] activities toward Arizona, or purposefully availed
17 [itself] of the privilege of conducting activities there."  *Morrill*, 873 F.3d at 1142.  The
18 Ninth Circuit's "analysis under the 'purposeful availment or direction' prong of the
19 specific jurisdiction test turns on the nature of the underlying claims."  *Ayla, LLC v. Alya*
20 *Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021).  "Where, as here, a case sounds in tort,
21 [the Ninth Circuit] employ[s] the purposeful direction test."  *Axiom Foods, Inc. v.*
22 *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).  "Purposeful direction 'requires
23 that the defendant … have (1) committed an intentional act, (2) expressly aimed at the
24 forum state, (3) causing harm that the defendant knows is likely to be suffered in the
25 forum state.'"  *Morrill,* 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 803).

26       Notably, the "[u]nilateral activity of another party or third person" is insufficient to
27 demonstrate purposeful direction and, therefore, cannot satisfy the first prong of the
28 specific jurisdiction test.  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023);

1  *see also, e.g., Helicopteros*, 466 U.S. at 417 (explaining that the "unilateral activity of another party or third person is not an appropriate consideration when determining whether *a defendant* has sufficient contacts with a forum State to justify an assertion of jurisdiction") (emphasis added).[5]

Here, Plaintiff has not alleged and cannot establish "purposeful direction" because she is unable to show that Salesforce committed an intentional act expressly aimed *at Arizona* that was likely to cause harm *in Arizona*. The only allegations that Plaintiff makes for the existence of jurisdiction over Salesforce are the generic and unsupported statements that Salesforce "conduct[s] business in Arizona," (*see* FAC at ¶ 22), and that *Lowe's* sent an unspecified number of marketing emails to Plaintiff that contained tracking pixels that Salesforce "provided." *See id.* at ¶¶ 3, 46.

Plaintiff's conclusory assertion that Salesforce "does business" in Arizona is not the specific, "case-linked" activity that gives rise to *specific* personal jurisdiction. *See Bristol-Myers Squibb*, 582 U.S. at 262. Plaintiff's allegation that Salesforce "provided" the tracking pixel to Lowe's does not establish Salesforce's purposeful direction of *any* injurious activity *at Arizona*. Salesforce does not control the content or recipients of emails that its subscribers, including Lowe's, sends. *See* Ratcliff Decl. at ¶¶ 5, 8. Thus, Salesforce does not control to whom Lowe's emails are sent, whether Lowe's emails contain tracking pixels, or whether and how Lowe's chooses to notify its email recipients

---

[5] *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."); *Nat'l Specialty Pharmacy, LLC v. Padhye*, No. 23-CV-04357-PCP, 2024 WL 2206336, at *3 (N.D. Cal. May 16, 2024) (granting defendant's motion to dismiss for lack of personal jurisdiction, noting that plaintiff's allegations regarding the actions of persons other than the defendant did not "demonstrate [defendant's] *own* targeting of [the] forum" (emphasis added)); *Bibiyan v. Marjan Television Network, Ltd.*, No. CV181866DMGMRWX, 2019 WL 422664, at *4 (C.D. Cal. Feb. 4, 2019) (explaining that the availability of defendant's application on California-based platforms, nor the hosting of defendant's website by a California-based corporation had any bearing on whether *defendant* purposefully directed its activity at California).

that Lowe's uses tracking pixels. *Lowe's* makes *all* those decisions. *See id.* at ¶¶ 5, 8, 13. And Plaintiff cannot rely on the actions of *Lowe's* to establish specific personal jurisdiction over *Salesforce*. *See Yamashita*, 62 F.4th at 503; *Helicopteros*, 466 U.S. at 417; *Hanson*, 357 U.S. at 253.

Because Plaintiff has failed to establish that Salesforce purposefully directed *any* case linked activity *at Arizona*, Plaintiff has failed to carry her burden of establishing the first prong required to find specific personal jurisdiction.

### 2. Plaintiff's Claims do not Arise Out of Or Relate to Any Forum-Related Activities of Salesforce.

"In deciding whether [plaintiff's] claims arise out of [defendant's] local conduct, this circuit applies a but for test." *TP Racing LLLP v. My Way Holdings LLC*, 2018 WL 4679676, at *4 (D. Ariz. Sept. 28, 2018); *see also Yamashita*, 62 F.4th 496, 504 (9th Cir. 2023) (noting that "for an injury to arise out of a defendant's forum contacts required 'but for' causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action").

Here, Plaintiff is unable to demonstrate how her claims arise out of or relate to *any* of Salesforce's forum-related activities. The gravamen of Plaintiff's claim is that she received emails from Lowe's (after subscribing to receive such emails) that contained tracking pixels, that Salesforce provided the tracking pixels that Lowe's used, and those tracking pixels obtained certain read-receipt information without Plaintiff's consent. *See* FAC at ¶¶ 1, 3, 46. Salesforce does not control the content of its subscribers' emails (including whether they contain tracking pixels) or to whom those emails are sent, much less where. *See* Ratcliff Decl. at ¶¶ 5,8,13. Thus, there is *no* forum-related activity of Salesforce for Plaintiff's claim to have arisen out of or relate to. Plaintiff has accordingly failed to carry her burden of establishing the second prong of the specific personal jurisdiction test.

### 3. *The Exercise of Personal Jurisdiction Over Salesforce Would be Unreasonable.*

To determine the reasonableness of exercising specific personal jurisdiction over a non-resident defendant, the following seven factors must be considered: "(1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002). Based on these factors, it would be unreasonable to exercise specific personal jurisdiction over Salesforce in this lawsuit.

As to these factors, Salesforce did not "interject" itself into the affairs of Arizona at all, much less purposefully. Salesforce offered subscribers like Lowe's access to an online portal through which Lowe's builds its own emails, uploads its own recipient lists, and initiates its own emails – not to send allegedly violative emails to Arizona residents. Moreover, Salesforce is headquartered in California with a minimal workforce in Arizona. *See* Ratcliff Decl. at ¶ 2. Thus, Salesforce's evidence would come from outside Arizona. And Arizona is not the only state with an interest in adjudicating this lawsuit. Both Delaware and California have at least an equal interest in adjudicating this dispute to ensure its corporate citizens like Salesforce comply with the law.

Regarding the sixth factor, a "plaintiff's convenience is not of paramount importance." *Munderloh v. Biegler GmbH*, No. CV-21-08004-PCT-GMS, 2022 WL 901408, at * 6 (D. Ariz. Mar. 28, 2022) (internal quotation and citation omitted). Instead, "[t]his [importance of the chosen forum] factor weighs most strongly in favor of the plaintiff if the chosen forum presents the *only means of litigating a claim*, or if refusing to exercise jurisdiction would force the plaintiff to pursue the case in multiple locations." *Id.* (internal quotation and citation omitted) (emphasis added). And "[t]he plaintiff bears the

burden of proving the unavailability of an alternative forum." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d, 1122, 1133-34 (9th Cir. 2003).

Accordingly, these factors collectively weigh against the reasonableness of the Court exercising specific personal jurisdiction over Salesforce.

## IV. PLAINTIFF LACKS STANDING BECAUSE SHE HAS NOT ALLEGED AN INJURY UNDER ARTICLE III

Under Rule 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction when a plaintiff fails to allege facts sufficient to establish standing under Article III of the United States Constitution. *Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction on a Rule 12(b)(1) motion. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) ("[P]laintiff[] bear[s] the burden of demonstrating that [she] ha[s] standing."). To establish Article III standing, Plaintiff "must show (i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

As a preliminary matter, Plaintiff's allegation that Salesforce violated the ATUCA does not confer Article III standing because "under Article III, an injury in law *is not* an injury in fact." *Ramirez,* 594 U.S. at 427 (emphasis added). Thus, simply because Arizona's Legislature created "a cause of action," that does "not relieve courts from the responsibility to independently decide whether a plaintiff has suffered a concrete harm." *Id.* at 426; *see also id.* ("[T]his court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

Other than allegations that the ATUCA was violated, Plaintiff alleges only one injury: the loss of privacy. *See* FAC at ¶ 78. Courts routinely reject alleged loss of privacy alone as a basis to establish a concrete and particularized injury. *See, e.g., Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040, 1049 (D. Ariz. 2023) (plaintiff alleging invasion of privacy based upon receiving unwanted debt-collection mail failed to establish "a concrete injury to satisfy Article III standing"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 827, 835 (N.D. Cal. 2021) (concluding plaintiffs had failed to establish "Article III standing" based upon their allegations that defendants invaded their privacy by capturing "their keystrokes, mouse clicks, and page scrolling").[6]

Indeed, a federal district court in an analogous case recently held that an alleged loss of privacy in connection with an alleged ATUCA violation was insufficient to satisfy the concrete injury requirement. *See Hartley v. Urban Outfitters, Inc.*, No. CV 23-4891, 2024 WL 3445004 (E.D. Pa. July 17, 2024). In that case, the plaintiff alleged that defendant Urban Outfitters, Inc. captured the same read-receipt information at issue in this case from the plaintiff, without her permission, using tracking pixels embedded in Urban's promotional emails. *Id.* at *1. The court determined that plaintiff's sole allegation of harm—the loss of privacy—failed to establish the existence of a concrete injury, because the information allegedly captured by the tracking pixels was either (i) information the plaintiff "voluntarily disclosed" when she signed up for Urban Outfitters' promotional emails, or (ii) information for which the plaintiff does not have "a reasonable expectation

---

[6] *See, e.g., I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (holding that alleged loss of privacy was not a concrete injury establishing Article III standing because "the Court [did] not view the collection of email addresses, phone numbers, Zynga usernames, Zynga passwords, and Facebook usernames [as] so private that their revelation would be highly offensive to a reasonable person"); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 63 (W.D. Pa. 2023) (finding that plaintiff's alleged loss of privacy based upon the capture of her browsing "interactions" with plaintiff's website did not "qualify as a concrete injur[y] under Article III"); *In re BPS Direct, LLC*, No. 22-CV-4709, 2023 WL 8458245, at *10, 14 (E.D. Pa. Dec. 5, 2023) (explaining that the capture of "browsing activity," "viewing activity, search activity, and purchase behavior is [not] enough to establish concrete harm").

of privacy." *Id.* at * 6 ("Plaintiff fails to sufficiently allege how she was harmed by Defendant gleaning the type of device, operating system, or email viewing platform she used to read Defendant's emails, and in any event, such details are not comparable to those traditionally contemplated as giving rise to a reasonable privacy interest.").

Here, Plaintiff similarly alleges in conclusory fashion that her "right to privacy" was "invaded" and that Defendants "intruded upon [her] seclusion," *see* FAC at ¶ 78, but there are no allegations pointing to *any* actual harm suffered as a consequence of Defendants' alleged capture of email read-receipt information (alleged to be when and where it was opened, how many times, how long, whether it was printed or forwarded, and the device used to open it, *see* FAC ¶ 3) and Plaintiff does not even attempt to suggest that the capture of such mundane information would be "highly offensive" to a reasonable person. *See Davis v. HDR Inc.*, 652 F. Supp. 3d 1087, 1097 (D. Ariz. 2023) ("A claim for intrusion upon seclusion or invasion of privacy requires the [p]laintiff to prove … that the intrusion would be highly offensive to a reasonable person."). Presumably, Plaintiff voluntarily provided her name and email address to Lowe's when she subscribed to receive Lowe's emails, so that is not an injury Plaintiff may claim. *See Hartley* at *12 ("As a willing subscriber, Plaintiff could not have been harmed by [Urban Outfitters'] procurement of her name or associated email addresses—details she necessarily provided to [Urban Outfitters] when she signed up for its promotional emails.") As Plaintiff's conclusory allegations about the loss of privacy cannot confer Article III standing, the Court should dismiss the FAC pursuant to Rule 12(b)(1).

## V. THE EMAIL READ-RECEIPT INFORMATION AT ISSUE IS NOT A "COMMUNICATION SERVICE RECORD" UNDER THE ATUCA.

Plaintiff's sole claim is brought under the ATUCA, which provides that a person shall not "[k]nowingly procure, attempt to procure, solicit or conspire to procure" a "communication service record of any resident of [Arizona] without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means."

A.R.S. § 44-1376.01.  A.R.S. § 44-1376(1) defines "communication service record" as including:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

The statute excludes from the definition "the content of any stored oral, wire or electronic communication or a telephone record." *Id.*[7]

Plaintiff's claim fails because the email read-receipt information at issue is not covered by the ATUCA, which on its face applies to the records of a "communication service."  Lowe's is a home improvement retailer, not a communication service provider, and the FAC does not plead that Salesforce (or Lowe's) procured records about her from a communication service.  Rather, the subject of the FAC is records relating to the email communications from Defendants (Lowe's) to Plaintiff.  The distinction between Defendants' (Lowe's) own records and the records of a communication service is manifest in the types of records included within the operative definition (*i.e.,* billing and installation address, length of service, payment method, etc.), which is the information the Arizona Legislature sought to protect third parties from surreptitiously accessing.[8]  Despite Plaintiff's allegations to the contrary, "the time and place where Plaintiff … opened the email, the average read time of an email, the amount of times an email was opened,

---

[7] Aside from the recent wave of actions espousing this same theory against others (*see Hartley*, No. CV 23-4891, 2024 WL 3445004 *8, fn. 54 (collecting cases)), Salesforce is unaware of the ATUCA being invoked outside of criminal matters.  *See, e.g., State v. Zuck*, No. 2 CA-CR 2019-0130, 2021 WL 2103598 (Ariz. Ct. App. May 25, 2021).

[8] Specifically, the Arizona Legislature was concerned with data brokers who "fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting.'"  Ariz. H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (Apr. 24, 2006).

- 16 -

whether an email was printed, whether an email was forwarded, and how long the recipient looked at the email" (FAC at ¶ 3) is not information included or contemplated within the definition of "communication service record." *See Ctr. for Biological Diversity v. Norton*, 240 F. Supp. 2d 1090, 1099 (D. Ariz. 2003) ("It is a canon of statutory construction that words should not be added to or read into a statute.").

Plaintiff seemingly takes the position that such information constitutes "records of the path of an electronic communication between the point of origin and the point of delivery." *See, e.g.,* FAC at ¶¶ 69, 73, 74. But Plaintiff alleges that tracking pixels obtain information about when and where an email was opened, how long it was open, whether it was forwarded, and the like. Assuming these allegations are true, none of these events can logically occur until *after* an email is delivered (or "the point of delivery," using the ATUCA's parlance). In other words, the tracking pixel cannot track "when" an email was opened, "how long" the email was open, whether it "was forwarded," or the like until the email is in fact delivered. Thus, the information Defendants are accused of illegally procuring (*see* FAC ¶ 3) is excluded from the category of communication records "*between* the point of origin and the point of delivery." As neither Salesforce nor Lowe's are alleged to have illegally procured information covered by the ATUCA, Plaintiff has not stated a claim, and the FAC should be dismissed, with prejudice.

## VI. CONCLUSION

For the foregoing reasons, Salesforce respectfully requests the Court dismiss the FAC, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

- 17 -

DATED this 25th day of July, 2024.

                    SNELL & WILMER L.L.P.

By: */s/Gregory J. Marshall*
    Gregory J. Marshall
    Emily R. Parker
    One East Washington Street
    Suite 2700
    Phoenix, Arizona  85004-2556

    *Attorneys for Defendant Salesforce, Inc.*

4859-5098-0563

- 18 -